# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JBLANCO ENTERPRISES, | ) | CASE NO. 1:13-cv-2831 |
| | ) | |
| Plaintiff/Third-party Defendant, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| SOPREMA ROOFING AND | ) | |
| WATERPROOFING, INC., | ) | |
| | ) | |
| Defendant/Third-party Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BARLOVENTO, LLC, | ) | |
| | ) | |
| Third-party Plaintiff/Intervenor, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GREAT AMERICAN INSURANCE GROUP, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

This matter is before the Court upon the motion of defendant and third-party defendant Soprema Roofing and Waterproofing, Inc.[1] ("Soprema") for summary judgment on: (1) the complaint of plaintiff JBlanco Enterprises, Inc. ("JBlanco"); (2) counts II, III, IV, and VII of the complaint of intervenor/third-party plaintiff Barlovento, LLC's ("Barlovento"); and (3) Soprema's breach of contract claim against JBlanco. (Doc. Nos. 67 and 67-1 ["Mot."].) Both JBlanco and Barlovento opposed Soprema's motion. (Doc. No. 68 ["Barlovento Opp'n"]; Doc.

---

[1] In its motion for summary judgment, Soprema states that it has been improperly named as Soprema Roofing and Waterproofing, Inc., and that its correct name is Soprema, Inc. (Mot. at 495 (All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.).)

No. 70 ["JBlanco Opp'n"].) Soprema filed separate replies. (Doc. No. 72 ["Reply to Barlovento"]; Doc. No. 73 ["Reply to JBlanco"].) Barlovento was granted leave to file a sur-reply. (Doc. No. 74-3 ["Barlovento Sur-reply"].)

For the reasons that follow, Soprema's motion for summary judgment is granted.

## I. BACKGROUND

### *JBlanco's complaint*

This case, before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, was originally filed in district court in Colorado and transferred to the Northern District of Ohio. (Doc. No. 21.) JBlanco, a Colorado corporation, is a commercial roofing contractor. (Doc. No. 1 ["JBlanco Compl."] ¶ 1.) Soprema, an Ohio corporation, sells roofing materials to contractors like JBlanco. (*Id.* ¶ 2.) Soprema provided roofing materials to JBlanco for installation on certain government buildings at the United States Air Force Academy ("Academy").[2] (*Id.* ¶¶ 8-9.) Problems arose with those government roofing projects. JBlanco claims the problems are caused by the roofing materials supplied by Soprema, and asserts a single contract claim against Soprema for breach of express and implied warranties under the law of the State of Colorado. (*Id.* ¶¶ 10-24.)

### *Soprema's complaint*

Soprema sued JBlanco in a separate lawsuit, Case No. 1:14-cv-79,[3] for failing to pay Soprema for the roofing materials purchased by JBlanco for the government roofing projects at issue in JBlanco's complaint. (Doc. No. 1-2 in Case No. 1:14-cv-79 ["Soprema Compl."].)

---

[2] JBlanco's complaint identifies the buildings at issue as Vanderberg Hall, Arnold Hall, and GSA Building No. 50. (JBlanco Compl. ¶ 9.)

[3] Soprema's lawsuit, filed in the Medina County Court of Common Pleas, was removed by JBlanco to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

Soprema's complaint asserts four causes of action in that regard: (1) breach of the authorized roofing contractor agreement between Soprema and JBlanco; (2) breach of JBlanco's application for credit contract with Soprema; (3) conversion of roofing materials supplied by Soprema to JBlanco; and (4) unjust enrichment. (*Id*. ¶¶ 14-39.) The Court consolidated Soprema's case with the above-captioned action, treating Soprema's complaint in Case No. 1:14-cv-79 as a counterclaim to JBlanco's complaint. (Doc. No. 15 in Case No. 1:14-cv-79.) On summary judgment, Soprema seeks $556,693.41 in unpaid invoices and finance charges, as well as attorney fees.[4]

### *Barlovento's complaint*

Barlovento was granted leave to intervene as a third-party plaintiff in the above-captioned case when the roof repairs to the Air Force's Consolidated Educational Training Facility ("CETF") at the Academy in Colorado (the "CETF project") were added by JBlanco and Soprema to the scope of the litigation between them. (Doc. No. 49-1 at 239; Minute Order 09/09/2015.) Barlovento's complaint raises allegations against JBlanco and Soprema with respect to the CETF project only, and not the other government roofing projects at issue between JBlanco and Soprema. (*See* Doc. No. 50 ["Barlovento Compl."].)

Barlovento, an Alabama limited liability company, provides general contractor, design, and construction services to the government and industry clients. (*Id*. at ¶ 7.) Barlovento contracted with the United States Department of the Air Force to replace the roof on the CETF, and subcontracted with JBlanco to provide the labor, materials, and equipment for that job. (*Id*. ¶¶ 8-10.) JBlanco purchased the roofing materials from Soprema. Barlovento does not have a

---

[4] If Soprema's motion on the counterclaim is granted, Soprema requests a hearing at which it will present evidence of reasonable attorney fees.

contract with Soprema. As part of the subcontract with Barlovento, JBlanco was required to obtain a performance bond, and did so from Great American Insurance Group ("Great American"). (*Id*. ¶¶ 11-12.)

After the CETF project was complete, the Air Force would not accept the roof because of discoloration, cracking, and blistering, and required the roof to be replaced in its entirety. (*Id*. ¶¶ 19-21.) Barlovento claims: (1) breach of contract against JBlanco (counts I[5] and V[6]) for failing to properly store, prepare and apply the roofing materials on the CETF project, and for failing to indemnify Barlovento in accordance with the terms of the subcontract between them; (2) breach of contract against Soprema (Count II[7]) for breaching implied warranties of merchantability and fitness for a particular purpose in Soprema's agreement with JBlanco, to which Barlovento alleges it is a third-party beneficiary; (3) negligence against both JBlanco and Soprema (counts III[8] and IV[9]); (4) breach of express warranty against JBlanco (count VI[10]) with respect to the subcontract between Barlovento and JBlanco; (5) breach of express warranty against Soprema (count VII[11]) with respect to an alleged 10-year written manufacturer's warranty issued by Soprema to the Air Force for the CETF project, to which Barlovento alleges it is a third-party beneficiary; and (6) breach of performance bond against Great American (count VIII[12]). Soprema moves for summary judgment on all of Barlovento's claims against it.

---

[5] Barlovento Compl. ¶¶ 22-26.

[6] Barlovento Compl. ¶¶ 48-52.

[7] Barlovento Compl. ¶¶ 27-32.

[8] Barlovento Compl. ¶¶ 33-39.

[9] Barlovento Compl. ¶¶ 40-47.

[10] Barlovento Compl. ¶¶ 53-59.

[11] Barlovento Compl. ¶¶ 60-65.

[12] Barlovento Compl. ¶¶ 66-71.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the Court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.* 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand*

5

*Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

Summary judgment is required:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. Soprema's Motion as to JBlanco's Complaint

Soprema maintains that it is entitled to judgment as a matter of law on JBlanco's single contract claim against it for breach of express and implied warranties because all warranties to JBlanco were expressly disclaimed by Soprema in a 2008 agreement between them. (Mot. at 504-05.) The parties do not dispute that on May 29, 2008, JBlanco entered into a Soprema Authorized Roofing Contractor Agreement ("Agreement") with Soprema, or that paragraph 7.1

of the Agreement disclaims all express and implied warranties as to the roofing contractor—in this case, JBlanco. (Doc. No. 67-2 at 517-25 ["Agreement"].) The Agreement is signed on behalf of JBlanco by Jeannette Wellers ("Wellers") as JBlanco's president. (*Id.* at 525.)

JBlanco opposes the motion on two grounds. First, JBlanco argues that the terms of the Agreement do not apply to the government roofing projects at issue in this case. Second, even if the Agreement does apply, JBlanco contends that the Agreement's warranty disclaimer is unenforceable because it is unconscionable as a matter of law.[13] (JBlanco Opp'n at 730-31.) Soprema disagrees, contending that the Agreement applies to all roofing projects performed by JBlanco utilizing Soprema's roofing products,[14] and that paragraph 7.1 of the Agreement is not unconscionable.

Although JBlanco's claims against Soprema are based Colorado law, both Soprema and JBlanco cite Ohio law in support of their respective arguments regarding interpretation of the Agreement and unconscionability of the warranty disclaimer provision. Paragraph 13.11 of the Agreement provides that the Agreement, and all amendments and modifications thereto, are governed and construed "in accordance with the internal law, not the law of conflicts, of Ohio."[15]

### *The Agreement applies to the government roofing projects at issue*

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."

---

[13] After Soprema's motion was fully briefed, the Court conducted an evidentiary hearing on September 2, 2016, on the issue of unconscionability of Soprema's warranty disclaimer. Wellers testified on behalf of JBlanco, and Todd Jackson ("Jackson") testified on behalf of Soprema. In ruling on Soprema's motion, the Court has considered the testimony of the witnesses, the arguments of counsel, and the exhibits admitted at the hearing in ruling on the issue of unconscionability, as well as the parties' summary judgment briefing.

[14] *See* Doc. No. 67-2 (Affidavit of Todd Jackson ["Jackson Aff."]) ¶¶ 13-14).

[15] The parties did not address the issue of what substantive law applies if the Agreement does not apply to the government roofing projects in this case. Courts sitting in diversity apply the law of the forum state, including the choice of law rules. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (citations omitted).

*Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted). The Court's role in interpreting a contract is to ascertain the intent of the parties, which is presumed to reside in the language they used in their agreement. *Id.* at 763 (quoting *City of St. Mary's v. Auglaize Cnty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007) and *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)).

When interpreting a contract, "the contract must be construed as a whole" in order to give "reasonable effect to every provision in the agreement." *Id.* (quoting *Tri-State Grp., Inc. v. Ohio Edison Co.,* 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002) and *Stone v. Nat'l City Bank*, 665 N.E.2d 746, 752 (Ohio Ct. App. 1995)); *see also Saunders v. Mortensen*, 801 N.E.2d 452, 455 (Ohio 2004) ("We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. If it is reasonable to do so, we must give effect to each provision of the contract.") (citation omitted).

Contract language is ambiguous when its meaning cannot be determined from the four corners of the agreement, or when the language at issue is subject to two or more reasonable interpretations. *Savedoff,* 524 F.3d at 763 (quoting *Covington v. Lucia*, 748 N.E.2d 186, 190 (Ohio Ct. App. 2003)). Common words are to be given their plain and ordinary meaning unless a "manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Id.* at 764 (quoting *Alexander v. Buckeye Pipe Line Co.,* 374 N.E.2d 146, 150 (Ohio 1978)). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio*, 474 N.E.2d 271, 272 (Ohio 1984) (citation omitted).

JBlanco contends that there is a genuine issue of material fact regarding whether the Agreement applies to any other project than the Dick Cheney Federal Building ("Dick Cheney

project") because the terms of the Agreement are ambiguous as to its scope and applicability. (JBlanco Opp'n at 735-36.) In support of this argument, JBlanco offers the affidavit of Wellers. The affidavit purports to aver that Wellers understood the Agreement only applied to the Dick Cheney project—the project for which JBlanco first entered the Agreement in 2008 to purchase Soprema roofing supplies. According to Wellers' affidavit, her understanding is evidenced by the handwritten note she added when she signed the agreement, which states: "We need 60 day terms for this job." (Doc. No. 70-1 at 742-44 ["Wellers Aff."] ¶¶ 5-6; Agreement at 525.) JBlanco argues that Wellers' handwritten note creates an ambiguity regarding the scope of the Agreement that requires a factfinder to resolve.

Wellers' affidavit, however, is unsigned. In its brief, JBlanco states that the affidavit is unsigned because Wellers was out of town without access to a notary, but that "[a]n executed, notarized copy will be filed shortly after her return." (JBlanco Opp'n at 732 n. 1.) An executed and notarized affidavit was never filed. Unsigned affidavits do not qualify as proper Rule 56 evidence in support of or opposition to a motion for summary judgment. *See Nassif Ins. Agency, Inc. v. Civic Prop. & Cas. Co.*, No. 03-2618, 2005 WL 712578, at *3 (6th Cir. Mar. 30, 2005) (citations omitted). Therefore, the Court may not consider Wellers' affidavit in ruling on the motion for summary judgment. *Finch v. Xavier Univ.*, 689 F. Supp. 2d 955, 962 (S.D. Ohio 2010) (citing, among authority, *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–69 (6th Cir. 1991) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.")).

Regardless, the plain language of the Agreement is unambiguous regarding its scope and applicability. First, an examination of the Agreement reveals that it contains no reference to the Dick Cheney project.[16]

Second, section 11 of the Agreement governs "Term and Termination." This section plainly and unambiguously provides that the Agreement automatically renews on a calendar year basis unless terminated by either party in writing. (*See* Agreement ¶¶ 11.1-11.4.) Because the language of the Agreement regarding duration of the contract is plain and unambiguous, even if Wellers' affidavit was signed, neither her affidavit nor her testimony at the evidentiary hearing can be introduced to create an ambiguity in the Agreement's evergreen clause. *See Plastech Engineered Prod., Inc. v. Cooper-Standard Auto., Inc.*, No. 3:01 CV 7658, 2003 WL 22436210, at *5 (N.D. Ohio Oct. 23, 2003) ("If the terms are not ambiguous, the court determines the meaning of the contract without reference to any parol/extrinsic evidence.") (citing *Shifrin v. Forest City Enters., Inc.,* 597 N.E.2d 499, 501 (Ohio 1992)). Moreover, even were the Court to credit the unsigned affidavit of Wellers that she added the 60 day term language as a condition of her acceptance of the Agreement, JBlanco has advanced no evidence that this purported alteration or amendment to the Agreement was accepted by Soprema in accordance with the plain and unambiguous terms of paragraph 13.1, which requires any alteration or amendment of the Agreement to be in writing and signed by an officer of Soprema. (Agreement ¶ 13.1.)

---

[16] Although the evidentiary hearing was scheduled by the Court only to address the issue of unconscionability of Soprema's warranty disclaimer, Wellers also testified at the hearing regarding the applicability of the Agreement to the government roofing projects at issue herein. At the hearing, Wellers testified that the Dick Cheney project is not mentioned in the Agreement.

According to Soprema's records, the Agreement was in effect during the CETF project. (Doc. No. 73-1 (June 20, 2016 Affidavit of Todd Jackson ["6/20/16 Jackson Aff."]) ¶ 8.) JBlanco offers no evidence that the Agreement was terminated in accordance with its provisions by either party before the CETF project was consummated.

"'In a contract dispute, summary judgment is permissible when the contractual language of the contract is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits contract interpretation of the agreement as a matter of law.'" *Dragomier v. Local 1112 Int'l Union United Auto. Aerospace & Agr. Implement Workers of Am.*, 64 F. Supp. 3d 1033, 1042 (N.D. Ohio 2014) (quoting *Averill v. Gleaner Life Ins. Soc.,* 626 F.Supp. 2d 756, 761 (N.D. Ohio 2009)). Here, the plain and unambiguous language of the Agreement provides for automatic renewals unless terminated. There is no evidence that the Agreement was terminated by either party before the government roofing projects at issue in this case commenced. Thus, the Court concludes that there is no genuine issue of material fact that the Agreement was in effect and applicable to the government roofing projects at issue in this action, including the CETF project.

### *Section 7 is not unconscionable*

Paragraph 7.1 of the Agreement clearly and unambiguously provides that Soprema makes no express or implied warranties to JBlanco with respect to Soprema's roofing products used by JBlanco in the government projects at issue in this case:

7. <u>Soprema's Warranty</u>

**7.1 UNLESS OTHERWISE AGREED TO BY SOPREMA IN A WRITING SIGNED BY AN OFFICER OF SOPREMA, ANY PRODUCTS SOLD BY SOPREMA TO CONTRACTOR ARE SOLD AS IS AND WHEREIS [SIC]. SOPREMA DOES NOT MAKE ANY WARRANTIES TO CONTRACTOR EXPRESS OR IMPLIED. IN NO EVENT WILL SOPREMA BE LIABLE TO CONTRACTOR, ITS EMPLOYEES, AGENTS, INDEPENDENT**

**CONTRACTORS, OFFICERS, DIRECTORS, SHAREHOLDERS, MANAGERS, MEMBERS OR PARTNERS, AS THE CASE MAY BE, FOR ANY DAMAGES, INCLUDING ANY LOST PROFITS, LOST SAVINGS OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE, SALE, OR MARKETING OF ANY PRODUCTS SOLD BY SOPREMA TO CONTRACTOR.**

7.2 Even though Soprema is not warranting any products to Contractor, Soprema reserves the right, in its discretion, to issue a warranty to any building owner relating to its products and/or any roofing application or system. In the event Soprema delivers its warranty to Contractor, Contractor shall promptly deliver that warranty to the building owner or return it to Soprema.

(Agreement ¶¶ 7.1-7.2 (all capitalization and bold in original).)

JBlanco argues that paragraph 7.1 is unconscionable under Ohio law, and therefore unenforceable, because Soprema's disclaimer of warranties completely abdicates any responsibility for its products and leaves JBlanco with no remedy or avenue for recourse if Soprema's products are defective. (JBlanco Opp'n at 737.) But in Ohio, contracting parties in Ohio are free to agree to exclude or limit warranties if the exclusion or modification satisfies the requirements of Ohio Rev. Code § 1302.29(B).[17] *Chemtrol Adhesives, Inc. v. Am. Mfr. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio 1989); *Brondes Ford, Inc. v. Habitec Sec.*, 38 N.E.3d 1056, 1079 (Ohio Ct. App. 2015) ("R.C. 1302.92(B), part of Ohio's version of the Uniform Commercial Code ("UCC"), allows for contracting parties to limit or alter damages, provided that such disclaimers are conspicuous.") (citing *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.,* 423 N.E.2d 151 (Ohio 1981)).

---

[17] Section 1302.29(B) provides that:

(B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that "There are no warranties which extend beyond the description on the face hereof."

Paragraph 7.1 satisfies the requirements of § 1302.29(B). The warranty disclaimer in the Agreement is conspicuous in bold face type and all capital letters, and specifically states that Soprema makes no express or implied warranty to the roofing contractor, and is not liable for any damages arising out of the use or sale of Soprema's products. Limitation of consequential damages where the loss is commercial is not *prima facie* unconscionable. *Chemtrol Adhesives*, 537 N.E.2d at 639 (citing Ohio Rev. Code § 1302.93(C)).

Whether paragraph 7.1 is unconscionable is an issue of law for the Court,[18] and in Ohio, is governed by Ohio Rev. Code. § 1302.15:[19]

> (A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Ohio Rev. Code § 1302.15.

Unconscionability has both a procedural and substantive element. *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 616 (N.D. Ohio 2016). "The procedural element focuses on oppression and surprise, which arise, respectively, from an inequality in bargaining power resulting in the absence of a meaningful choice or hidden, unexpected terms." *Id.* (citations omitted). "The substantive element, on the other hand, turns on reasonableness. Courts have found a term to be substantively suspect if it reallocates the risks of the bargain in a[n]

---

[18] *Hurst v. Enter. Title Agency, Inc.*, 809 N.E.2d 689, 694 (Ohio Ct. App. 2004) (quoting *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.*, 423 N.E.2d 151, 156 (Ohio 1981)).

[19] Uniform Commercial Code § 2-302 (Unconscionable contract or clause) is codified in Ohio as Ohio Rev. Code § 1302.15.

objectively unreasonable or unexpected manner." *Id.* (quotation marks and citations omitted). "'The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable.'" *Ahmmad v. Ahmed*, 38 N.E.3d 434, 444 (Ohio Ct. App. 2015) (quoting *Hayes v. Oakridge Home,* 908 N.E.2d 408, 412 (Ohio 2009) (further citation omitted)). Findings of unconscionability in commercial settings are rare. *Chemtrol Adhesives,* 537 N.E.2d at 639 ("[W]e agree with the Arizona Supreme Court that '[a]lthough a commercial purchaser is not doomed to failure in pressing an unconscionability claim, * * * findings of unconscionability in a commercial setting are rare.'") (internal citations omitted).

### *Warranty disclaimer is not procedurally unconscionable*

JBlanco has failed to carry its burden to establish that paragraph 7.1 of the Agreement is procedurally unconscionable. The procedural element of unconscionability focuses on "oppression and surprise, which arise, respectively, from an inequality in bargaining power resulting in the absence of a meaningful choice or hidden, unexpected terms." *Traxler*, 158 F. Supp. 3d at 616 (collecting cases). Wellers testified at the hearing that JBlanco has been a roofing contractor on "lots of" roofing contracts—primarily government contracts. Although she could not provide a specific number of roofing projects, Wellers testified that at least eighteen (18) of those projects since 2008 were performed with Soprema roofing materials. Wellers testified that, over the last five years, JBlanco did between three and nine million dollars in business annually, and employs approximately 70 employees.

The evidence advanced by JBlanco fails to establish that there was significant inequality in bargaining power between JBlanco and Soprema. Both JBlanco and Soprema are commercial entities involved in the roofing industry. JBlanco is a multimillion dollar operation, and has been

a roofing contractor for many years. Over the past several years, 18 of JBlanco's roofing projects utilized Soprema roofing products.

Even if there was a disparity in bargaining power between them, JBlanco has offered no evidence that any such inequality resulted in an absence of meaningful choice, or hidden and unexpected terms in Soprema's roofing contractor agreement with JBlanco. There is no evidence that JBlanco lacked a meaningful choice in electing to become an authorized Soprema roofing contractor and did not willingly enter into the Agreement.[20] There is no evidence that JBlanco entered into the Agreement under coercion or duress. If Wellers considered the warranty disclaimer unsatisfactory, JBlanco was free to secure roofing materials from other manufacturers with potentially more favorable warranty terms.

Finally, because of JBlanco's extensive commercial dealings with Soprema, JBlanco should have not been surprised by Soprema's warranty terms. If JBlanco determined at any time that Soprema's warranty disclaimer was unsatisfactory, JBlanco was free to terminate the Agreement in accordance with its terms.

The Court finds that JBlanco has failed carry its burden to establish that Soprema's warranty disclaimer is procedurally unconscionable because there was an inequality of bargaining power between JBlanco and Soprema that resulted in the absence of a meaningful choice on behalf of JBlanco, or hidden or unexpected terms in the Agreement. *Traxler*, 158 F. Supp. 3d at 616 (citations omitted); *see also Haga v. Martin Homes, Inc.*, No. 2000AP020018,

---

[20] Wellers testified that she read and signed the Agreement on behalf of JBlanco. Under Ohio law, parties to a contract are presumed to have read and understood, and agreed to be bound by, a contract that they willingly signed. *See Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 745 (Ohio 2007) (it is a "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed[]") (citation omitted); *see also State ex rel. DeWine v. C & D Disposal Techs.*, 58 N.E.3d 614, 619 (Ohio Ct. App. 2016) (signatory to consent order presumed to have actual knowledge of its terms) (citation omitted).

2000 WL 1133267, at *3 (Ohio Ct. App. Aug. 4, 2000) (facts sufficient to support finding that an arbitration clause is not unconscionable where appellants were previously involved in retail installment contracts, appellant was the manager of a "rent-to-own" business involved in sales agreements, appellants admit that they were given an opportunity to read the agreement and contract and did not question the provision, and appellants were free to secure alternative financing).

JBlanco must establish both the procedural and substantive elements to prove unconscionability. *Ahmmad*, 38 N.E.3d at 444 (quotation marks and citations omitted). Therefore, the Court concludes as a matter of law that JBlanco has failed to carry its burden to establish that the warranty disclaimer is unenforceable because it is unconscionable.

### *Warranty disclaimer is not substantively unconscionable*

Even if JBlanco could establish the procedural element of unconscionability, JBlanco has failed to establish the substantive element. That element turns on reasonableness, that is, whether the contract term reallocates the risk in an objectively unreasonable or unexpected manner. *Traxler,* 158 F. Supp. 3d at 616 (citations omitted).

"When considering substantive unconscionability, a court should determine whether the terms of the contract are commercially unreasonable." *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 822 N.E.2d 841, 846 (Ohio Ct. App. 2004) (citation omitted). "No set of general factors governs commercial unreasonableness; rather considerations will vary on a case by case basis." *Price v. Taylor*, 575 F. Supp. 2d 845, 852 (N.D. Ohio 2008) (citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.,* 680 N.E.2d 240, 243 (Ohio Ct. App. 1996)). "That said, some of the factors courts have considered when determining substantive unconscionability are: the fairness of the terms, the charge for the service rendered, the standard

16

in the industry, and the ability to accurately predict the extent of future liability." *Christ Holdings, L.L.C. v. Schleappi*, --N.E.3d--, 2016 WL 3522037, at *10 (Ohio Ct. App. June 15, 2016) (citation omitted).

Soprema's in-house counsel, Jackson, testified at the evidentiary hearing that issuing a roof warranty to the building owner, rather than the roofing contractor was, in Soprema's experience, standard in the industry. JBlanco introduced no evidence that Soprema's warranty disclaimer as to the roofing contractor is commercially unreasonable or renders either JBlanco or Soprema unable to accurately predict the extent of their respective future liabilities. The Court concludes as a matter of law that plaintiff has also failed to establish the substantive element of unconscionability, and on this additional basis, has failed to carry its burden to show that paragraph 7.1 of the Agreement is unconscionable, and therefore, unenforceable.

### Soprema's warranty disclaimer to roofing contractor does not abdicate responsibility for its roofing products

JBlanco's final argument, that paragraph 7.1 is unconscionable because Soprema's warranty disclaimer completely abdicates Soprema's responsibility for its roofing products, is unavailing. (JBlanco Opp'n at 737.) "A warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer is unconscionable. However, a warranty in which the party disclaiming warranties or remedies assumes some form of responsibility for the performance or maintenance of the product in issue is not unconscionable." *Zaremba*, 458 F. Supp. 2d at 549 (N.D. Ohio 2006) (quoting *Westfield Ins. Co. v. HULS Am., Inc.,* 714 N.E.2d 934, 949 (Ohio Ct. App. 1998)).

With respect to the roofing contractor, paragraph 3.5 of the Agreement requires the contractor to immediately notify Soprema of any defective products received. (Agreement ¶ 3.5.) Jackson testified at the hearing that defective product issues are resolved with roofing contractors

through Soprema's customer service department, sales department, and technical department, although Soprema's only legal responsibility for defective products flows to the building owner. (*See also* 6/20/2016 Jackson Aff. ¶ 4 ("As a matter of practice, SOPREMA will replace any defective or otherwise nonconforming products it sells as long as it is seasonably notified thereof and validates the claim.").) Wellers testified at the hearing about a single government roofing project at the Academy where JBlanco had a problem with Soprema tape not sticking. After a "whole bunch of e-mails back and forth," Soprema gave JBlanco a credit for the tape. By issuing a credit to JBlanco, Soprema assumed responsibility for the defective tape. Wellers testified that, with respect to the instant dispute over whether the issues with the CETF roof are caused by a defective roofing product or defective installation, Soprema has not indicated that it would compensate JBlanco for any defective materials.

Paragraph 7.2 of the Agreement states that while Soprema is not providing a warranty to the roofing contractor, Soprema may issue a warranty to the owner of the building upon which Soprema's roofing products were installed. (Agreement ¶ 7.2.) At the evidentiary hearing, Jackson testified regarding the process by which Soprema issues a warranty to the owner of the building when a roofing contractor installs Soprema's roofing products. With respect to the CETF project, the parties do not dispute that Soprema did issue a 10 year written warranty to the Air Force. The Air Force, however, rejected Soprema's warranty because, in the government's view, the commencement of warranty date was incorrect in the context of paragraph 3 of the warranty.[21]

---

[21] Jackson testified at the evidentiary hearing that Soprema was willing to delete the payment timing language from the 10-year written warranty to the Air Force. It was unclear at the hearing why the language in the warranty regarding payment was not modified and reissued to the Air Force.

The discretionary extended warranty issued to the Air Force by Soprema under paragraph 7.2 of the Agreement, however, is not the only method by which Soprema assumes responsibility for its roofing products. Jackson testified at the hearing that UCC warranties applicable between the Air Force and Soprema also protect the building owner, regardless of whether the Air Force rejected the written 10 year warranty. Similarly, Soprema's basic 5 year warranty is provided to every building owner regardless of whether Soprema issues a longer warranty under paragraph 7.2 of the Agreement, or whether the building owner accepts Soprema's longer written warranty.[22] Jackson testified at the hearing that Soprema's warranty disclaimer as to the roofing contractor does not disclaim the UCC warranties and Soprema's basic 5 year warranty on its building materials as to the building owner. JBlanco has provided no evidence to the contrary that these warranties do not apply to protect the building owner with respect to Soprema's products.

Through these mechanisms, Soprema assumes "some responsibility" for its roofing products, and has chosen to limit its responsibility and risk for its roofing products to the building owner. *See Zaremba*, 458 F. Supp. 2d at 549. For this additional reason, the Court concludes as a matter of law that Soprema's warranty disclaimer is not unconscionable.

### *Soprema is entitled to judgment as a matter of law on JBlanco's claims*

JBlanco's complaint against Soprema asserts a single contract claim for breach of express and implied warranties. For the reasons discussed above, the Court concludes as a matter of law that the Agreement was in force and applies to the government roofing contracts at issue in this

---

[22] During his testimony, Jackson cited Soprema's website describing Soprema's basic 5 year materials warranty—www.soprema.us/warranty.

case. The Court also concludes as a matter of law JBlanco has failed to carry its burden to establish that Soprema's paragraph 7.1 of the Agreement is unconscionable.

Paragraph 7.1 provides that "**SOPREMA DOES NOT MAKE ANY WARRANTIES TO CONTRACTOR EXPRESS OR IMPLIED**." (Agreement ¶ 7.1) (all capitalization and bold in original.) By the plain and unambiguous terms of the Agreement, Soprema provided no warranty to JBlanco, express or implied, for roofing products used by JBlanco on the government roofing projects at issue herein.

In the absence of an express or implied warranty, JBlanco cannot establish an essential element of its contract claim against Soprema for breach of express and implied warranties. Thus, Soprema is entitled to judgment as a matter of law on JBlanco's complaint. *Celotex*, 477 U.S. at 322-23. Soprema's motion for summary judgment as to JBlanco is granted.

## C. Soprema's Motion on its Counterclaim

In support of its motion for judgment on its counterclaim against JBlanco for failing to pay for goods and materials obtained from Soprema on credit, Soprema offers the affidavit of Amber Branan, its Credit/Collections Manager. (Doc. No. 67-3 (Affidavit of Amber Branan ["Branan Aff."]).) In addition to signing the Agreement, Wellers also signed an "Application for Credit" on behalf of JBlanco, and was approved for credit by Soprema. (Branan Aff. ¶¶ 5-7.) The "terms of sale" in section 6 of the Agreement provide for an interest rate of 2% a month for unpaid balances, and for reasonable attorney fees and costs incurred by Soprema to collect overdue amounts. (Branan Aff. ¶¶ 8-9.) JBlanco obtained goods and materials from Soprema on credit for which JBlanco has not paid. (Branan Aff. ¶ 11.) JBlanco owes Soprema $556,693.41 for goods and materials and finance charges which JBlanco has failed to pay. (Branan Aff. ¶¶ 12-14.)

JBlanco does not dispute that it has not paid Soprema for the roofing materials at issue. In its answer to Soprema's complaint/counterclaim, JBlanco's defense for failing to pay Soprema's invoices is that JBlanco's obligation to pay is set-off by Soprema's alleged breach of express and implied warranties. (Doc. No. 6 (Case No. 1:14-cv-79) (JBlanco Answer ["Ans."]) at 111.)

Apart from its arguments against Soprema's motion for summary judgment on JBlanco's claim for breach of express and implied warranties, JBlanco did not separately oppose Soprema's motion for judgment on its counterclaim, either with respect to liability or the amount due. JBlanco offered no evidence in opposition to Branan's affidavit regarding the invoices for roofing material purchased by JBlanco, of the calculation of the amount due in accordance with the Agreement, or of Soprema's counterclaim for reasonable attorney fees.[23]

The Court has ruled that Soprema is entitled to summary judgment on JBlanco's claim against it for breach of express and implied warranty. This ruling eliminates JBlanco's affirmative defense to Soprema's counterclaim.

The Branan affidavit and evidence attached thereto supports Soprema's motion for judgment on its counterclaim in the amount of $556,693.41. JBlanco has not come forward with any evidence to the contrary or that would otherwise create a genuine fact dispute regarding the amount, or obligation to pay, the amount due. *See Celotex*, 477 U.S. at 323 (Once the moving party meets its initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial.)

---

[23] The purpose of the evidentiary hearing was limited to the issue of unconscionability. There was some questioning of Jackson, however, by counsel regarding discrepancies between the Agreement and Soprema's invoices to JBlanco concerning payment terms. This questioning was not directed, however, to challenge the amount claimed in Soprema's counterclaim, but to the larger issue of whether the terms of the Agreement controlled the government roofing projects at issue in this case.

Thus, Soprema is entitled to judgment as a matter of law. Soprema's motion for summary judgment on its complaint/counterclaim is granted.

**D. Soprema's Motion as to Barlovento's Claims**

Soprema moves for summary judgment on all of Barlovento's claims against it.

***Count II—breach of express and implied warranties in the Agreement***

In count II of its complaint, Barlovento alleges that: (1) it is a third-party beneficiary to the Agreement; (2) Soprema breached its agreement with JBlanco by violating implied warranties of merchantability and fitness for a particular purpose; and (3) Soprema is liable for its breach of warranty to Barlovento as a third-party beneficiary to the Agreement. Barlovento advances two arguments in opposition to Soprema's motion on count II.

First, like JBlanco, Barlovento argues that the roofing contractor warranty disclaimer in the Agreement is unconscionable.[24] The Court has concluded, however, that Soprema's warranty disclaimer is not unconscionable, but is enforceable, and granted Soprema's motion for summary judgment on JBlanco's claim for breach of express and implied warranties. Therefore, even if Barlovento were an intended third-party beneficiary to the Agreement, a third-party beneficiary to a contract "can receive no greater rights from the contract than those possessed by the

---

[24] In its opposition to Soprema's motion, Barlovento cites Colo. Rev. Stat. § 13-21-111.5(6)(g), which provides:

> (g) **Choice of law.** Notwithstanding any contractual provision to the contrary, the laws of the state of Colorado shall apply to every construction agreement affecting improvements to real property within the state of Colorado.

Colo. Rev. Stat. Ann. § 13-21-111.5(6)(g).

Barlovento contends, without citation to authority or analysis, that "[t]he application of this statute possibly voids any contractual choice of law provision in the agreements among the parties." (Barlovento Opp'n at 569.) That said, Barlovento maintains that "whether the Court determines that Ohio or Colorado law controls, the result is the same. Soprema cannot fully disclaim all warranties and [Soprema's] motion should be denied." (*Id.* at 570 n.1.)

signatories." *Cleveland-Akron-Canton Advert. Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 922 N.E.2d 1012, 1017 (Ohio Ct. App. 2009) (citation omitted).

Barlovento's second argument is that even if Soprema did disclaim all express and implied warranties in the Agreement, Soprema made superseding express warranties regarding the suitability of its products for the CETF project under both Ohio and Colorado law,[25] and thus there are genuine issues of fact concerning Soprema's warranty obligations. (Barlovento Opp'n at 562-63.) In support, Barlovento directs the Court to four pieces of evidence: (1) JBlanco's registration of the CETF project with Soprema, which identifies Barlovento as the general contractor and the project requirement of a 10 year warranty (Doc. No. 68-4); (2) Soprema's notice of intent to warrant the "proposed assembly" for 10 years once successfully installed (Doc. No. 68-5); (3) Soprema's 10 year warranty issued to the Air Force (Doc. No. 68-10); and (4) the deposition testimony of Gianfranco Pacello ("Pacello") regarding Soprema's review and use of the government's CETF project specifications in order for Soprema to issue an intent to warrant (Doc. No. 68-14 ["Pacello Dep."]). Barlovento also points to Soprema's inspection and approval of the installation of Soprema's materials on the CETF roof as evidence of an express warranty that supersede Soprema's disclaimer of warranties as to JBlanco.

According to Barlovento, this evidence shows—or at least raises disputed facts—that Soprema designed the CETF roofing assembly, expressly warranted that the assembly met the Air Force's specifications, and issued a 10 year warranty for the roof at the conclusion of the project. (Barlovento Opp'n at 562-63.) Soprema argues in reply that JBlanco's registration of the

---

[25] Barlovento cites both Ohio Rev. Code § 1302.26(A)(1) (express warranty created by any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain) and Colo. Rev. Stat. § 4-2-313(1)(a) (express warranty is created by "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain").

CETF project with Soprema, Soprema's notice of intent to warrant, and Soprema's 10 year warranty issued to the Air Force are steps required by the terms of the Agreement in order for Soprema to issue the express warranty to the building owner described in paragraph 7.2, and neither creates superseding express warranties, nor raises issues of fact as to whether Soprema created express warranties that superseded the warranty disclaimer in paragraph 7.1.

The Court has concluded herein that the Agreement applies to the government roofing projects at issue in this case, including the CETF project.[26] The Agreement requires JBlanco to submit a Soprema Warranty Request Form indicating that JBlanco intends to utilize Soprema products on a project, and for Soprema to notify JBlanco "whether or not the project will be considered for a warranty when the work is completed." (Agreement ¶ 2.5.) Pursuant to the Agreement, this intent to warrant may be made conditional by Soprema upon the satisfaction of various requirements, including inspection and acceptance of the installation by Soprema. (*See id*.) The Agreement requires the roofing contractor to permit Soprema to inspect the roof during installation. (*Id*. ¶ 3.10.)

These terms in the Agreement were followed for the 10 year warranty issued by Soprema to the Air Force for the CETF project in accordance with ¶ 7.2. The project registration form, completed by JBlanco, was submitted to Soprema. In accordance with the Agreement, Soprema issued an intent to warrant letter to JBlanco after reviewing the Air Force's specifications.[27] There is no dispute that during installation, Soprema inspected JBlanco's installation of

---

[26] Barlovento does not dispute Soprema's position that the Agreement is not exclusive to any one particular project, but contemplates that JBlanco will install Soprema materials as an authorized roofing contractor on multiple projects, one such project being the CETF project. (Barlovento Opp'n at 565.)

[27] The intent to warrant letter specifically, and repeatedly, provides that the proposed assembly will qualify for a 10 year warranty once installed, and is described for warranty purposes only and not for ensuring compliance with project specifications or code requirements. (Doc. No. 68-5.)

Soprema's roofing materials. Ultimately, JBlanco's installation was accepted by Soprema, and Soprema issued a 10 year warranty to the Air Force in accordance with the Agreement.

When construing the Agreement under Ohio law, the Court must consider the contract as a whole and give reasonable effect to all of its provisions. *Saunders*, 801 N.E.3d at 455. The Agreement plainly and unambiguously provides for the issuance of a warranty to the building owner but not the roofing contractor, and creates obligations on the part of both Soprema and JBlanco with respect to the building owner's warranty. In order to give reasonable effect to both paragraphs 7.1 and 7.2, and the provisions of the Agreement giving effect to paragraph 7.2, it would be unreasonable for the Court to construe the party's obligations under the Agreement with respect to the building owner's warranty to negate the warranty disclaimer as to the roofing contractor. To do so would be contrary to the law of contract interpretation in Ohio. *Id.* ("If it is reasonable to do so, [the Court] must give effect to each provision of the contract.") (citation omitted). To the extent that any of the documents issued in accordance with the terms of the Agreement regarding the building owner's warranty creates an express warranty, that warranty flows to the building owner, and does not negate Agreement's warranty disclaimer as to the roofing contractor.

Having concluded as a matter of law that Soprema's disclaimer of express and implied warranties as to JBlanco is not unconscionable, and is enforceable, JBlanco has no claim against Soprema for breach of express or implied warranties under the Agreement. Barlovento cannot claim to be a third-party beneficiary to a warranty that JBlanco does not have under the

Agreement.[28] Thus, Soprema is entitled to judgment as a matter of law on count II of Barlovento's complaint.

### Count III—negligence; Count IV—negligence per se

Barlovento's negligence claims are grounded in the government's rejection of the CETF roof because it does not conform to the contract terms between Barlovento and the government, and the requirement of the Air Force that the CETF roof be replaced in its entirety. (Barlovento Compl. ¶¶ 20-21, 33-47.) On summary judgment, Soprema argues that Barlovento is not in privity with Soprema, and Soprema owes no duty to Barlovento. Soprema contends that Barlovento's tort claims for recovery of purely economic damages are barred by the economic loss rule, and Soprema is entitled to judgment as a matter of law.

"Under Ohio law, '[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss.'" *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 569 (6th Cir. 2006) (quoting *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.,* 835 N.E.2d 701, 704 (Ohio 2005)). "Regarding the application of the economic loss rule to actions sounding in negligence, '[t]he well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 840 (S.D. Ohio 2013) (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n,* 560 N.E.2d 206, 208 (Ohio 1990)).

---

[28] In addition, Barlovento's citation to *Bobb Forest Prod., Inc. v. Morbark Indus.s, Inc.*, 783 N.E.2d 560 (Ohio Ct. App. 2002) in support of its argument that Soprema's knowledge that Barlovento was the general contractor, and a 10 year warranty was a project requirement, makes Barlovento a third party beneficiary to the Agreement, is inapposite. In *Bobb Forest Prod.*, the court concluded that the manufacturer of a custom sawmill knew who the identity of the ultimate sawmill consumer, and knew the consumer's specific needs, intended that the product would satisfy those needs. *Id.* at 576. In this case, the building owner, not Barlovento, is the ultimate consumer of Soprema's roofing products.

In the absence of injury to persons or damage to other property, a party may not recover for economic losses premised on tort theories of strict liability or negligence. *See E-Tank Ltd. v. Deist Indus., Inc.*, No. 5:11CV2358, 2012 WL 1109986, at *3–4 (N.D. Ohio Mar. 31, 2012). Personal injury involves injury to one's person, property damage includes damages to both the goods sold to the plaintiff and other property of the plaintiff. *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prod. Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *6 (S.D. Ohio Mar. 22, 2007) (citing *Chemtrol Adhesives,* 537 N.E.2d at 628). The economic loss rule "does not bar a plaintiff from recovering economic damages that occurred as a result of damage *to the plaintiff's property, . . .* but it cannot be avoided by claiming that physical damage occurred to the property of someone else." *City of Cleveland v. Ameriquest Mortg. Secs., Inc.,* 621 F. Supp. 2d 513, 525 (N.D. Ohio 2009) (citing *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.,* 653 N.E.2d 661, 667-78 (Ohio 1995)) (emphasis in original).

In this case, the economic loss alleged by Barlovento is the cost of tearing off and replacing the roof on the Air Force's CETF at a cost of more than $2.5 million dollars because the Air Force rejected the roof. Barlovento's economic loss does not result from damage to Barlovento's goods or property. As explained in *E. Ohio Gas Co. v. Kenmore Const. Co. Inc.*, No. CIV.A. 19567, 2001 WL 302818, at *3–4 (Ohio Ct. App. Mar. 28, 2001),

> The general rule is that "in the absence of privity of contract between two disputing parties * * * 'there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" *Queen City, supra,* at 615, citing *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St. 3d 1, 3, quoting Prosser & Keeton, Law of Tort (5 Ed.1984), 657, Section 92.
>
> "Privity * * * serves * * * to identify an interest or establish a relationship necessary to allow for the bringing of a tort action for purely economic damages." *Foster Wheeler v. Envirespose, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St. 3d 353, 365-366.

> Therefore, where privity of contract or its substitute exist, purely economic losses may be recovered in a tort action. *See Floor Craft Floor Covering, Inc. v. Parma Comm. Gen. Hosp. Assn.* (1990), 54 Ohio St. 3d 1, 8.

Thus, "Ohio law prevents the recovery of purely economic losses in a negligence action either where there is no 'privity or a sufficient nexus that could serve as a substitute for privity' or where recovery of such damages is not based upon a tort duty independent of contractually created duties." *Pavlovich,* 435 F.3d at 569 (citing *Corporex,* 835 N.E.2d at 703, 705; *Foster Wheeler Enviresponse, Inc.,* 678 N.E.2d at 529).

Barlovento argues that it has a sufficient nexus to the Agreement between JBlanco and Soprema to substitute for privity of contract between the parties. Moreover, Barlovento alleges in counts III and IV that Soprema owed Barlovento a duty—independent of any contractual duty—that Soprema allegedly breached in various ways related to the roofing materials and its conduct with respect to the design and installation of the roof.[29] Thus, Barlovento maintains that its negligence claims against Soprema are not barred by the economic loss rule.

There is no dispute that Barlovento is not a party to the Agreement between JBlanco and Soprema. Even if there were a sufficient nexus to substitute for privity, it would "'impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more.'" *Life Time Fitness, Inc. v. Chagrin Valley Eng'g, Ltd.*, No. 1:13CV566, 2014 WL 6879082, at *4 (N.D. Ohio Dec. 4, 2014) (quoting *Corporex,* 835 N.E.2d at 705); *Fed. Ins. Co. v. Fredericks*, 29 N.E.3d 313, 321 (Ohio Ct. App. 2015) ("[E]ven where a sufficient nexus or privity exists, 'only those contractual duties and liability for breach of those duties

---

[29] Both sides treat counts III and IV together as Barlovento's "negligence claims." Barlovento claims the same injury—more than $2.5 million dollars resulting from the government's rejection of the CETF roof under the government's contract with Barlovento—for both its negligence and negligence *per se* claims.

28

agreed to by the parties to the contract may be imposed.'") (quoting *Corporex*, 835 N.E.2d at paragraph one of the syllabus).

"The economic loss rule states that a party cannot receive relief in tort law when the claim arises out of contractual duties." *Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C.*, No. 1:08 CV 1565, 2011 WL 1134591, at *2 (N.D. Ohio Mar. 25, 2011) (citing *Floor Craft*, 560 N.E.2d at 211) ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."). The rule does not bar recovery, however, if the duty breached is independent from a contract. *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 766 (N.D. Ohio 2013) (citing *Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC,* 947 F. Supp. 2d 841, 855 (S.D. Ohio 2013). "A duty is independent of a contract if the defendant would owe that duty 'even if no contract existed.'" *Id.* at 767 (quoting *425 Beecher, LLC v. Unizan Bank, Nat'l Ass'n,* 927 N.E.2d 46, 59 (Ohio Ct. App. 2010) (further quotation omitted)).

Barlovento acknowledges that "where a plaintiff has suffered only economic harm as a result of a defendant's breach of a duty, a claim sounding in tort will be barred if the duty arose only by contract." (Barlovento Opp'n at 575.) Barlovento argues, however, that its negligence claims are not barred by Ohio or Colorado[30] law because its tort claims arise from non-contractual duties. Specifically, Barlovento contends that the Agreement concerns only the sale of roofing materials by Soprema to Blanco, but that "Soprema's actual conduct included design, onsite training, inspections and approvals that do not arise from that contract." (*Id.* at 577.)

---

[30] According to Barlovento Colorado law, like Ohio law, recognizes an exception to the economic loss doctrine for tort claims that arise from non-contractual duties. (Barlovento Opp'n at 577 n. 5.)

According to Barlovento, these duties "were voluntarily undertaken by Soprema in light of its agreement to issue a warranty on the CETF project[,]" and that Soprema did not perform those duties with ordinary care. (*Id.* (citing *Best v. Energized Substation Serv., Inc.,* 623 N.E.2d 158, 162 (Ohio 1993) ("When one voluntarily assumes a duty to perform, and another reasonably relies on that assumption, the act must be performed with ordinary care").)

Contrary to Barlovento's assertions, Soprema's obligations under the Agreement were not limited to the sale of roofing materials. Soprema's contractual obligations plainly and unambiguously include: providing standard specifications, instructions, procedures, and quality standards for Soprema products, as well as proper methods for application (Agreement ¶ 2.1); technical assistance and guidance, including on-site instruction (Agreement ¶ 2.3); resolution of discrepancies between Soprema's standard specifications and project specifications (Agreement ¶ 2.4); inspection and acceptance of JBlanco's installation prior to issuance of a warranty (Agreement ¶ 2.5); and training (Agreement ¶ 2.7). JBlanco was required under the Agreement to provide Soprema with access to the roofing project while work was in progress. (Agreement ¶ 3.10).

"Under Ohio law, 'each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness.'" *Dana Ltd.*, 984 F. Supp. 2d at 767 (quoting *Wells Fargo Bank,* 931 F. Supp. 2d at 840). "But this duty only 'describes how a party is to perform its contractual obligations, i.e., it does not establish a duty independent of the contract.'" *Id.* Thus, Barlovento's negligence claims based upon the manner in which Soprema performed its contractual obligations are barred by the economic loss rule.

Barlovento may state a tort claim in addition to a breach of contract claim if Barlovento is able to demonstrate that the alleged tortious conduct breached a duty owed separately from an

obligation created by contract. *Wells Fargo Bank,* 931 F. Supp. 2d at 839 (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* N.E.2d 1261, 1270 (Ohio Ct. App. 1996)). Barlovento claims that Soprema designed the CETF roof, and that this non-contractual conduct created a duty to Barlovento separate from any contractual obligation under the Agreement. Barlovento claims that Soprema breached this duty, resulting in a defective roof that was rejected by the Air Force and resulted in an economic loss to Barlovento of over $2.5 million dollars to tear off and replace the CETF roof.

To avoid application of the economic loss rule, however, the tort claim "'must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract.'" *Id.* (quoting *Textron*, 684 N.E.2d at 1271) (emphasis in original). Barlovento has not claimed any damages that Soprema's alleged negligence has caused *in addition* to the damages it seeks to recover in its breach of contract claims against Soprema. Indeed, the damages sought by Barlovento in its breach of contract claims against Soprema are identical to the negligence claims—the Air Force's rejection of the CETF roof and $2.5 million dollars to tear off and replace the roof. (*See* Barlovento Compl. ¶¶ 31, 39, 47, 65.) "This alone is fatal" to Barlovento's negligence claims. *Dana Ltd.*, 984 F. Supp. 2d at 767 ("Here, [plaintiff] has not claimed any damages [defendant's] alleged negligence caused beyond the damages it seeks to recover for breach of contract.") (citing *Wells Fargo,* 931 F. Supp. at 839).

Accordingly, Barlovento's negligence claims are barred by Ohio's economic loss rule, and Soprema is entitled to judgment as a matter of law on Barlovento's claims against Soprema in counts III and IV.

### *Count VII—breach of express warranty*

Barlovento's claim for breach of express warranty against Soprema is based on Soprema's written 10 year warranty issued to the Air Force in connection with the CETF project. Barlovento alleges that this warranty was intended to benefit Barlovento both as a matter of fact and of law.

Soprema contends that it is entitled to summary judgment on count VII because that cause of action is based upon the 10 year written manufacturer's warranty Soprema offered to the Air Force, but which was rejected by the Air Force. Thus, Soprema argues, there is no warranty in effect for the CETF project, and Barlovento cannot recover on a warranty that does not exist whether or not Barlovento was the intended beneficiary of the warranty. Soprema alternatively argues that even if the warranty was not rejected by the Air Force, Barlovento, as the general contractor, lacks standing to sue for an alleged breach of warranty issued to the building owner. (Mot. at 510-11.)

The parties do not dispute that Soprema tendered the 10 year express written warranty to the Air Force and that it was rejected by the Air Force. Nevertheless, Barlovento argues that there are genuine issues of fact concerning the existence of an express warranty, claiming that "[t]he record shows that – even though the Air Force disapproved the Soprema warranty – it did so based on paragraph 3 of the warranty[,]" and that a copy of the warranty in Soprema's file indicates that Soprema agreed to delete that provision of the warranty. (Barlovento Opp'n at 578-79.) Barlovento further claims that "[f]or that reason, Soprema marked the warranty as 'entered' and told Barlovento the warranty was 'in effect' as of May 29, 2014[,]" and sent an email to Barlovento confirming that the CETF warranty was "in effect." (*Id*. at 579.)

Barlovento's argument is unavailing, and there is no genuine issue of fact that, under Ohio law, Soprema's 10 year warranty to the Air Force is not in effect based on the undisputed record advanced by Barlovento. A claim for breach of express warranty is a contract claim, and the basic principles of contract law apply to the parties' dispute regarding the existence of Soprema's warranty. *See Nee v. State Indus., Inc.*, 3 N.E.3d 1290, 1300 (Ohio Ct. App. 2013) ("[P]rinciples of contract interpretation apply with equal force when interpreting warranty provisions.") (citations omitted). Courts generally determine the existence of a contract as a matter of law. *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 946 N.E.2d 835, 841 (Ohio Ct. App. 2010.) Under Ohio law, "'[a]n express contract occurs when the parties' assent to a contract's terms is expressed through offer and acceptance[.]'" *Gen. Power Prod. v. Nolan*, No. C-1-09-118, 2010 WL 883707, at *4–5 (S.D. Ohio Mar. 10, 2010) (quoting *United Nat'l Ins. Co. v. SST Fitness Corp.,* 309 F.3d 914, 919 (6th Cir. 2002)) (further citations omitted)).

Soprema tendered a warranty to the Air Force as the building owner. (Doc. No. 68-10 ["Warranty"].) The warranty is signed by Richard Voyer on behalf of Soprema, and his signature is dated November 13, 2013. (*Id*. at 694.) The first page of the warranty identifies the effective date as November 13, 2013. (*Id*. at 693.) Almost directly above Voyer's signature is the following statement: "*This warranty is not effective or binding against either party unless and until signed by both*. The only agents of Soprema authorized to sign this warranty are its President, General Manager, and Treasurer." (*Id*. at 694 (emphasis added).)

There is no dispute that the Air Force rejected Soprema's warranty on January 8, 2014, for the following reason:

> The effective date on the warranty [November 13, 2013] is not correct. This date should be when all parties have been paid in full per paragraph 3[31] and signed by both parties (ref. last statement on warranty). We will not pay all parties until we have a satisfactory roof.

(Doc. No. 68-11 at 699 ["Air Force Disapproval"] (footnote added).)

Barlovento has advanced no evidence that Soprema ever resubmitted the warranty to the Air Force, that the Air Force ever approved the warranty, or that any Soprema warranty was ever signed by both the Air Force and Soprema to make the warranty effective in accordance with its terms. There is simply no evidence in the record that the Air Force ever accepted any warranty offered by Soprema. The Court, therefore, concludes as a matter of law that there is no 10 year express warranty between Soprema and the Air Force.

Notwithstanding these undisputed facts, Barlovento points to three parts of the record that Barlovento argues create a genuine dispute of fact as to whether the warranty was effective. First, Barlovento points to hand-written notes and markings on the warranty indicating that Soprema was willing to delete paragraph 3. The warranty document obtained from Soprema's files shows a handwritten bracket next to paragraph 3 with the word "delete," and below

---

[31] Paragraph 3 of the warranty provides:

> 3. This warranty does not become effective unless and until: (a) Soprema and the system applicator have been paid in full for all labor, materials, and supplies provided for or in connection with your waterproofing system; and (b) Soprema has been paid the warranty charge relating to this warranty.

(Warranty at 693.)

paragraph 3 is written "Intentional Blank[.]"[32] (Warranty at 693.) But even assuming that Soprema was willing to delete paragraph 3 from the warranty, there is no evidence that Soprema ever sent such a revised warranty to the Air Force for acceptance, or that any such revised warranty was accepted, as required in order for the warranty to be effective.

Second, Barlovento points to Soprema's response to an email from Barlovento regarding the Soprema warranty to the Air Force. On May 29, 2014, Bruce Nidy from Barlovento sent an email to Soprema consisting of the following message: ". . . We seem to keep going in circles on this . . . is Soprema going to send the letter the Air Force requested confirming the roof warranty on the current and future blisters?" (Doc. No. 68-12.) Curt Liscum from Soprema responded: "According to our records the warranty was issued on 12/12/13 to the US Air Force and remains in effect." (*Id.*) There is a stamp on the first page of the warranty document of the word "ENTERED" with a date of December 12, 2013. The signature line in the ENTERED stamp block is blank. (Warranty at 693.)

The "ENTERED" stamp on the warranty dated December 12, 2013, pre-dates the Air Force's rejection of the warranty on January 8, 2014. Soprema's offer of an express 10 year written warranty, once rejected by the Air Force, ceased to exist. *See Energy Mktg. Servs., Inc. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 374 (S.D. Ohio 1999) (citing *Garrison v. Daytonian Hotel,* 663 N.E.2d 1316, 1318 (Ohio Ct. App. 1995)). With respect to Curt Liscum's response to an inquiry from Barlovento on May 29, 2014, that Soprema's warranty to the Air Force issued on December 12, 2013 and remains in effect, Barlovento argues that this statement creates a fact dispute as to the existence of a Soprema warranty. But Barlovento fails to cite any authority under Ohio law from which this fact alone—in the face of the undisputed record

---

[32] The hand written marking and words on the warranty are undated.

evidence that the warranty was never accepted by the Air Force—would support a finding that an express warranty was created between Soprema and the Air Force. At best, Soprema's email constitutes a scintilla of evidence that supports Barlovento's argument of the existence of a Soprema warranty. But a mere scintilla of evidence in support of Barlovento's position is insufficient—there must be evidence from which a jury could reasonably find that Soprema offered a warranty to the Air Force that was accepted by the Air Force. *Street*, 886 F.2d at 1477. The overwhelming undisputed evidence in the record is that Soprema's warranty was rejected by the Air Force and that Soprema did not submit another warranty to the Air Force. There is no evidence in the record that the Air Force ever accepted Soprema's 10 year written warranty. Barlovento cannot have third-party beneficiary rights to a warranty that does not exist. *See Cleveland-Akron-Canton Advert. Coop.*, 922 N.E.2d at 1017.

Accordingly, the Court finds that no reasonable jury applying Ohio law could find in favor of Barlovento on count VII because no 10 year written warranty is in effect between Soprema and the Air Force. Thus, Soprema is entitled to judgment as a matter of law on count VII of Barlovento's complaint.

### III. CONCLUSION

For all of the foregoing reasons, Soprema's motion for summary judgment on JBlanco's complaint, and Soprema's motion for summary judgment on its complaint/counterclaim, is granted. Further, for the reasons contained herein, Soprema's motion for summary judgment on counts II and VII of Barlovento's complaint is granted, and with respect to counts III and IV, the motion is granted as to Barlovento's claims against Soprema.[33]

**IT IS SO ORDERED**.

Dated: November 8, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[33] Counts III and IV in Barlovento's complaint also asserts claims against JBlanco, which are not the subject of Soprema's motion or this ruling.